**STERLING CONSTRUCTION, and Commercial Union Insurance, Petitioners,**

v.

**Freddy R. PRICE, and Workers' Compensation Court, Respondents.**

**No. 62493.**

Court of Appeals of Oklahoma, Division No. 4.

Feb. 19, 1985.

Rehearing Denied March 15, 1985.

Certiorari Denied April 15, 1986.

Paul V. McGivern, Jr., Eugene Robinson, McGivern, Scott, Gilliard & McGivern, Tulsa, for petitioners.

Ben A. Goff, Oklahoma City, Richard A. Bell, Norman, for respondents.

BRIGHTMIRE, Presiding Judge.

The issue in this workers' compensation case is whether injuries sustained in an automobile accident by a homeward-bound employee were compensably related to his employment. The trial court held they were. We affirm.

I

Freddy Price began working for Sterling Construction on a pipeline laying project about January 3, 1982. Eventually he became a welder's helper and was assigned to welder Massoth. Claimant testified that he "had to ride" to work with his welder and assist him as requested. As Price put it, "[O]ne thing the welders requested is that their helpers would be with them, you

know, all the time in case they needed something." The welder foreman confirmed this saying, "[I]t's normal for a helper to ride in and out with his welder."

While the truck used for home to work transportation was owned by Massoth it was leased by Sterling Construction for use on the pipeline job. The truck carried company beveling machines, oxygen bottles and welding supplies as well as some tools owned by Massoth.

The first of Price's daily duties was performed upon arrival at the employer's warehouse around 7 a.m. There he would load welding supplies onto the truck and fill the truck with gas. Claimant's pay commenced at "the time [they] left the warehouse."

On November 11, 1982, Price rode to work with Massoth and worked until 5 p.m. On the way home the welder stopped at Harvey's, a tavern on the road between the job site and the trailer park where both Price and Massoth lived. The welder foreman, Gene Pierce, testified that he had "made the suggestion that we stop at Harvey's that evening—or I had said that I intended to." And, added the foreman, "several of the other welders and operators thought it was—you know, try a new place.... I had made sure that Harvey's would be open when we came by from work that evening." Of course, "it was strictly voluntary," he said, and denied that company officials in Sterling, Colorado, were aware of the gathering or paid for anything in connection with it.

After about four or five hours, Price and Massoth left the tavern and stopped for dinner at a cafe down the road. They left the restaurant a little before 1 a.m. and were headed homeward when suddenly the truck skidded and overturned injuring Price. On August 23, 1983, he filed a claim for compensation.

On May 24, 1984, the trial court rejected the employer's defensive contention that the accident was not job related, found that claimant sustained 65 percent permanent partial disability to the body as a whole due to brain damage as well as 15 percent permanent partial disability to the left arm, and awarded compensation accordingly. Employer appeals directly to this court.

II

The only attack on the award in the employer's brief is that it is wrong because it rests on the spurious finding that claimant's injuries arose in the course of his employment when in fact, the employer insists, they did not since at the time of the accident claimant had been off work some five to seven hours, engaging in deviational activities of no benefit to Sterling Construction.

The employer's position, we conclude, is decisionally unsound.[1] It recognizes that except for the rest and nutrient stops, the facts otherwise bring the core of the dispute within at least one of the exceptions to the general rule denying compensation for injuries sustained by an employee going to or returning from work: (1) "where transportation to and from work is furnished by the employer," and (2) "where the employee, on his way to or from work, is still charged with some duty or task in connection with his employment." *Helmerich and Payne, Inc. v. Gabbard,* 333 P.2d 964, 965 (Okla.1958) (quoting *Novak v. McAlister,* 301 P.2d 234, 235 (Okla.1956)).

So the ultimate question then is this—were the pauses for refreshment and food deviations amounting to an irreversible abandonment by claimant of job related activity? It is hard for us to see how it would or could be. First of all, Price, it could be found, was duty bound to ride with his welder to and from work during which time he was required to stand ready to assist the welder. There is no evidence that claimant ever shirked this duty either before, during, or after the tavern and cafe stops. To suggest that claimant did not have to stop at the tavern or the cafe is to confuse misty abstractions with oil patch reality. Suppose he angelically opted to hitchhike on home and had been beset by

**1.** *See, e.g., Qualls Transfer & Storage Co. v. Cummings,* 505 P.2d 183 (Okla.1972); *In re Martin,* 452 P.2d 785 (Okla.1969); *Hughes v. Haco Drilling Co.,* 340 P.2d 472 (Okla.1959).

murderous marauders. Would the employer confess liability for such a noble effort? Or would it have pleaded that its servant forsook his duty to stay with its truck and its driver? While the reader ponders these alternatives, we proceed to hold that the compensatory protection he enjoyed at the beginning of the journey survived the revivifying interludes and endured even until the wreck.

### III

There was sufficient competent evidence to sustain the trial court's finding that Price's injuries arose out of and in the course of his employment.

Award sustained.

RAPP and STUBBLEFIELD, JJ., concur.